We have two cases scheduled for argument this morning. The first is Singh v. Garland, case number 19-73107, and I believe we have Mr. Srin arguing remotely.  The evidence submitted in the motion to reopen meets the burden substantially of changed country conditions, independent facts to illustrate that my client Rupinder Singh has a well-founded fear of returning to India. The judge in 1997 relied on the Department of State's country condition report that showed that harassment had ended in India for Sikhs, as well as the situation in Punjab had been stabilized. The United States Commission's International Religious Report for 2016, which was part of the record, shows a completely different picture where according to the United States Commission for Religious Freedom, it states India is a country of major concern where religious freedom has deteriorated, especially for Sikhs, and they had a whole subsection of violations that were occurring in India for Sikhs. This is substantial and qualitatively much different from his 97 hearings. If I can just ask you one question. I don't think it was in the record or I couldn't find it, but was a final order of removal ever issued for your client? I didn't see it in the record, but I assume the removal order was based on the judge's findings. The reason why I ask is he appeared before the IJ in 1997 and it looks like he went to the BIA and our court dismissed the petition in 2004, and now it's 18 years later. Perhaps the statutory language for a motion to reopen doesn't have a time limit for changed circumstances, but it does seem odd that there is an 18-year gap between our last decision and this motion to reopen. Given that time period, that will be changed circumstances in many countries. Yes, Your Honor. What basically happened in those 18 years is a Hindu fundamentalist political party came into power in India and dismantled the secular state and made it into Hindu theocratic state, which fundamentally changed the position for religious minorities in India. That's what the United States Commission report stated, that this is a country of concern, of major concern, like Iran and Korea. I'm sorry. Was somebody asking a question? I apologize. So, that was the major reason was the country condition changes that fundamentally showed that India is no longer a democratic secular state, but a Hindu theocratic state. If the court has no other questions, I'd like to keep the remaining time for rebuttal. Okay. We'll hear from the government. May it please the court. Geoffrey Leist, appearing on behalf of the Attorney General. The board acted within its broad discretion in denying the petitioner's untimely motion to reopen where he failed to demonstrate a material change in country conditions at this previous proceeding. When you say it was untimely, why is it untimely? Because the filing requirements, it has to be within 90 days of the final order of removal. Unless it's based on changed conditions. And you're saying it doesn't satisfy, there's no changed country conditions. Right. So, it's untimely and he has not shown the exception applies because he has not shown a material change. The overarching issue in this case, Your Honors, is that the petitioner's previous petition for review, his previous proceedings were denied. Everybody okay? Kwame, there's some extra noise. The previous proceedings and the previous decision by this court was based on a finding of adverse credibility. The petitioner's previous claim was that in 1996, he had been targeted by the police in Punjab because he was an advocate for Khalistan and he was associated with the Man Party. Again, the immigration judge, the board, and this court all found that the petitioner files a motion reopen in which he doesn't actually address that aspect of his previous claim. He just proceeds as if he was found credible and says if he goes back now, he's going to face harm because he's going to be an advocate for Khalistan. Well, let me pause you there, counsel, and just ask, doesn't his mother's, I can't remember if it's an affidavit or letter, if you accept what she says in that document as doesn't that go a long way toward abutting the notion that he was not credible when he originally testified back at the original hearing? I don't think it does, Your Honor. I believe that the affidavit, it reflects conditions as of right now. It says that he fled India in 1996, that they've been looking for him since then, and that they have now come looking for him based on a belief that he is in India still and that he is getting training from but that's not, it doesn't go back to rebut the previous claim because it doesn't actually address his previous allegations of harm. Aside from saying that he fled. It does strongly support his original narrative, right? I mean, again, if you accept what she is saying as true, it actually completely corroborates everything he was claiming originally, doesn't it? It doesn't say anything about what actually happened in 1996. It just says that he fled in 1996. It makes no actual, it doesn't actually corroborate the harm that he suffered back in 1996. The harm that's discussed there is harm that fell her in 2018. So it suggests that perhaps they are looking for him now, but it doesn't actually corroborate his previously not credible claim that he was targeted for harm back in 1996. But isn't that the whole point of changed circumstances, that there's a new, I mean, in a weird way, your argument now seems to be supporting that this is a changed circumstance because they are looking for him now. There's evidence that they are looking for him now. Why wouldn't that be something new that the BIA has to address? Well, because it's, the issue is whether the condition, the change in country conditions, if there is one and whether it is material, and that's where the average credibility comes in. This court recently, Judge Lee authored the opinion in Greenwood, dealt with the issue of where there's a previous motion, or excuse me, a previous average credibility determination, and then a subsequent motion to reopen. You have to determine whether or not this is a continuation of the claim that was previously found not credible. That's what we have here, Your Honor. Again, the petitioner in his motion to reopen did not address the issue of credibility. He just proceeded as if he had been found credible, and then his claim proceeds apace. But I think this is different from Greenwood, because here he's offered in the motion to reopen new evidence. So I don't know if you can rely on the prior adverse credibility determination. In Greenwood, he didn't provide new evidence, so it didn't matter. So he could rely on the prior adverse credibility determination. But here he's brought new evidence of his mother's affidavit, his birth certificate, a lot of things that were butted. So I don't know if you can just completely discount it. It seems like the IJ will have to look at that again, and maybe will ultimately come to the conclusion that no, there's no persecution. But I don't think you can rely on the prior adverse credibility determination here. Well, I believe in Greenwood, he did submit additional evidence. It was related to his prior claim, but he submitted evidence that his nephew had been murdered by the same party that he claimed was going to persecute him if he returned. But the court found that because it was just a continuation, essentially, of the previous claim. Well, there was the identity. It wasn't clear, you know, we didn't know who he even was. So the fact that maybe the, I think, the political conditions for a certain party in Jamaica had become worse didn't matter because, you know, we didn't know if he was even a member of that party. But here, I think it is a little bit different because he is providing more evidence. And again, you know, it seems like the IJ needs to assess that rather than just completely discount it, saying, well, he was found not credible before. Well, there's, the other point is the board found him to be, that the not, the adverse credibility determination did carry over and cited to Feige. They also then addressed the evidence and indicated that it reflected a continuation of claims, or excuse me, conditions that were already in existence since his previous proceedings. You know, the Petitioner focuses on a change from 2014, but doesn't actually address the fact that the same evidence he relies on indicates this is a longstanding problem in India. Going back 40 years, he provides a letter from the Mann Party that says that, you know, this has been going on since the mid-1980s. That, you know, the Sikhs had been suffering since then. The country conditions reports he submits, excuse me, also indicate that this is worse, but that's also in the Jabali situation. That you're looking at a qualitatively different, you know, conditions, not just something, a slight deterioration. It has to be- Well, can I ask you about that? Because you just said qualitatively different conditions. Is it qualitatively different conditions or is it qualitatively different evidence that triggers, you know, at least the two Feige test? I believe it has to be qualitatively different conditions. That you cannot just rely on what in essence is a continuation of prior conditions. You have to- That you just have new evidence of- Right, exactly. So if you're presenting evidence that, you know, on the continuum, this is just continuing along the same line with a little bit of variation, that's not the type of evidence that they're looking at, not the type of change in conditions, where it has to be a change in kind, not just a change in degree. In the Jabali, you know, the country report that the applicant submitted said that conditions had worsened, but besides that, it just reflected conditions that were already in existence at the time of previous hearing. And that's what we have here, Your Honor. The conditions going back to the mid-1980s for Sikhs who advocate for Khalistan have been less than ideal. They are- And, you know, the man letter details, the author of that letter, the things that he has gone through, the numerous arrests and detentions and things like that going back to the 1980s through the 90s to the 2000s to the 2010s. So this is an ongoing situation in India that predates the petitioner's previous hearing. So if we were to accept that argument, then you say it doesn't matter what the mother's letter says, because even if the harm is different for him and the evidence showing the harm is different for him, the conditions in the government's view were always the same? The petitioner's mother's affidavit indicates that they have been looking for him since 1996. So if we're to assume that that is accurate, then this just reflects, you know, the latest incident. There's no indication that she has had no issues since then. It would seem that if they've to her, you know, several times in the past 25 years, it may be that this time they got violent with her, which certainly isn't an issue. But it's just a reflection of the conditions that have existed seemingly since he left in 1996. I thought the record suggested, though, that the 1996-1997 period was kind of a period of particular calm in terms of relationships between Hindus and Sikhs. And what has happened, I'm sorry, since 2015 is that there's really been a pretty marked increase in Sikh militancy, which has in turn caused the government to crack down. And that's exactly what his mother's affidavit says. These folks who came to her house were concerned about that. He had involved himself with this Sikh militancy. So what's your response to that? Well, first of all, Your Honor, is that we have the previous abrogatability determination, where we have no evidence as to what activities he actually took. The only thing we have of anything since then is his allegation that he's been advocating and agitating for Kalestan in the United States with no actual indication as to what that is. As far as conditions in 1996 and 1997, there was a bit of an upswing at the time. But the 1997 addendum that's in the record also indicates that people who were suspected of being Sikh militants, that they were being subjected to arrested and that there were police abuses of detainees. So even that, it was something that was still in existence at that time, even if generally for Sikhs conditions may have not been as bad as they had been, for people who were affiliated with or suspected of being related to the militants, that they were still being targeted for arrest, detention, and things like that. And that if they were detained, that there were incidents of police misconduct towards detainees. Is there no further questions? Thank you. Thank you. You have time for rebuttal. Thank you, Your Honor. I wish to rebut every single fact and statement made by government counsel. Basically, number one, Judge Lee was 100% correct. Greenwood was a criminal. Nobody knows who he is. He applied for a U.S. passport, was convicted. To raise that issue over here obscures the issue of my client's identity. His birth certificate's there. His daughter's birth certificate's there. His two children's birth certificate's born in the United States is there. His identity is not an issue. As far as Tovkovi is concerned, that was an Iranian claiming to be a Christian, and he was found. He never converted. There is no issue that my client is a Sikh. To raise these issues is, again, to discolor his discussion. The judge in 1996 echoed what Judge Watford just said. The situation had changed. Sikhs could peacefully live and reside in Punjab. His mother states with the Congress Party coming into power in 2017 in Punjab, they're looking and seeking out for Pakistani overseas activists such as Rupinder Singh. This is a change material fact. The BIA relied on matter of LEA. That was vacated by the Attorney General. There is no basis to uphold the BIA decision on social group. It's gone. Their standing, their precedent has been vacated. He has demonstrated his social group. Government counsel agrees to that. We bring to this court's attention, number two, no time did the judge in 1996 claim my client was a member of the Mann Party. He never claimed to be a member of the from Mr. Mann himself. He's a member who will be killed by the Indian police today. These are different facts. Can I ask a question about that? It seems odd to me that someone would join a political party. Maybe not odd that they joined the political party that was persecuted in the foreign country, but for that to be a basis for them not to go back, why wouldn't anyone? It seems like this political party joining, it's different than a religious affiliation, meaning anybody could just join this political party and then they could be making these same arguments and they'd never have to actually deal with the consequences because their whole point is we wouldn't have to go back to the country. Is there any concern that that would be a basis for a changed circumstance that a person had changed a political party that isn't particularly active, unless you correct me, in the United States? Your Honor, he's an overseas separatist. It's like a Zionist. Basically, he wants the state of Palestine to be changed to the state of Israel. My client joined this party solely to make a homeland peacefully in Punjab. He joined it solely peacefully according to Mr. Mann, who is the president of the party. You're not getting a 14-page letter from the president of the political party based in Punjab, who's been persecuted, shot at, being tortured, saying this guy is a full-fledged card-carrying member and will be killed. His mother was arrested basically because the Indian government said he's a terrorist hiding in the arch enemy, Pakistan's country, getting militant training. Those facts haven't been dealt with. Those are the underlying facts of this case. He wants to peacefully create a Sikh separatist state in Punjab. He never ever advocated that in 1996. He was a member of a welfare society and his identification documents were found to be questionable. He's not providing you any. He's providing you independent facts and independent documentation from his testimony. He's not claiming anything. Mr. Mann is claiming his mother is claiming. The United States Commission of Religious Report is unequivocally stating India is no longer a democratic secular state and a very dangerous state for religious minorities where Hindus are targeting, lynching, killing, intimidating, harassing them. Now this court recently in a similar Ninth Circuit case in Cora versus Wilkinson stated that the present government of Punjab, the Congress party, those are the people who arrested his mother and beat her and sent her to jail, stated that Mann party, according to that decision, are being intimidated and harassed since 2017 in the state of Punjab. That's a Ninth Circuit precedent case that came out in 2021 and it establishes unequivocally my client's claim. Based on the overwhelming evidence, he has met his burden and this matter should be sent back to the BIA for them to consider this evidence and not rely on matter of LEA which has been vacated. Thank you very much, Your Honor. Okay, thank you. Thank you to both counsel for your arguments in the case. The case is now submitted.
judges: WATFORD, NELSON, LEE